```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS


 UNITED STATES OF AMERICA,        )
                                  )
            Petitioner            )
                                  )
      -VS-                        ) Civil No. 13-11530-PBS
                                  ) Pages 1 - 11
 BRIAN MAHONEY,                   )
                                  )
            Respondent            )
```

                    **STATUS CONFERENCE (Excerpt)**


            BEFORE THE HONORABLE PATTI B. SARIS
               UNITED STATES CHIEF DISTRICT JUDGE



A P P E A R A N C E S:

   PATRICK M. CALLAHAN, ESQ., Assistant United States Attorney,
Office of the United States Attorney, 1 Courthouse Way, Room 9200,
Boston, Massachusetts, 02210, for the Petitioner.

   MICHAEL R. SCHNEIDER, ESQ., Good Schneider Cormier,
83 Atlantic Avenue, 3rd Floor, Boston, Massachusetts, 02110,
for the Respondent.

                              United States District Court
                              1 Courthouse Way, Courtroom 19
                              Boston, Massachusetts  02210
                              January 17, 2014, 9:17 a.m.




                    LEE A. MARZILLI
                 OFFICIAL COURT REPORTER
               United States District Court
               1 Courthouse Way, Room 7200
                   Boston, MA  02210
                     (617)345-6787


                        E X C E R P T

```
 1                    P R O C E E D I N G S
 2             THE CLERK:  Court calls Civil Action 13-11530, United
 3   States v. Brian Mahoney.  Could counsel please identify themselves.
 4             MR. CALLAHAN:  Patrick Callahan for the United States.
 5             MR. SCHNEIDER:  Good morning, your Honor.  Michael
 6   Schneider.
 7             THE COURT:  So let me just start off by thanking
 8   Mr. Schneider for taking this case.  Procedurally where we are is,
 9   there was a motion to have a dangerousness hearing.  We had
10   appointed Timothy Watkins, and then he was fired, and then I think
11   another attorney -- was it another attorney came in?  Yes, and then
12   he was fired.  He has been deemed incompetent by another court.
13   That was appealed and affirmed by the First Circuit.  I now have it
14   for dangerousness for some jurisdictional quirk because he's
15   technically here in Massachusetts.  The competency hearing was held
16   in New Hampshire.
17             At our last hearing, I would have -- for the record,
18   Mr. Mahoney is not here.  He was upset, belligerent.  I don't
19   remember this but staff does:  He threw something.  He's upset.  He
20   wants to go pro se, as you probably read through the voluminous
21   pleadings that we have.  I've received a brief from the government,
22   and we have confirmed it with our own research, that I believe that
23   any waiver of counsel cannot be voluntary because he's incompetent;
24   and that, in any event, even if he had some competency, given his
25   behavior at the last proceeding, I don't think that he could
```

```
 1   represent himself.
 2           Now, to add to that -- have you had a chance to read the
 3   report?
 4           MR. SCHNEIDER:  I have not.  I've read a lot of the
 5   pleadings and I've read the transcript --
 6           THE COURT:  You have not read the psychiatric report?
 7           MR. SCHNEIDER:  -- but I haven't read the report.
 8           THE COURT:  Have you read it?
 9           MR. CALLAHAN:  Your Honor, for the record, I called
10   Mr. Schneider because I didn't know in what capacity he was
11   representing Mr. Mahoney, and we're instructed to keep those under
12   seal.  I can get him copies today, but I just didn't know if it was
13   appropriate for him to get it not under seal, but I can get that to
14   him.
15           THE COURT:  I have at this point, if he accepts, formally
16   appointed him as counsel.  Now, the one remaining issue is that, the
17   question is whether he's willing to accept it full-bore or whether
18   he would first like to look into the issue himself about whether or
19   not someone who has been deemed incompetent can represent himself at
20   a dangerousness hearing.  I don't know the conditions under which
21   you took it.
22           MR. SCHNEIDER:  Well, I think I will leave that to the
23   Court.  That was going to be the first thing that I wanted to
24   clarify was what the scope of my appointment was, and the reason --
25   so I received my CJA Form 20 last Friday, I believe it was, and I
```

1  try to usually send out letters to clients.  I kind of held off
2  sending out a letter to Mr. Mahoney and I held off going out to
3  Devens to visit him because I wanted to clarify.  If I'm being
4  appointed as amicus to write a brief, then -- and I actually might
5  have a slightly different take on my overall objective perception of
6  what the case law says.  If I'm appointed to represent Mr. Mahoney,
7  I think I would come in with probably a more tendentious
8  argumentative position, keeping his expressed interests in mind,
9  which is --
10             THE COURT:  That's okay.  I've seen you in that condition
11  before.  You do it very well.  Let me put it this way:  I'm
12  appointing you for all purposes.  I've at least looked at the case
13  law.  I have read the government's brief.  I've looked at the case
14  law myself through my wonderful law clerk, and we think that if he's
15  deemed incompetent and it is confirmed by both the report, in my
16  mind, and certainly my observation of his behavior, I think I need
17  to appoint counsel.
18             Now, that doesn't preclude you from moving for
19  reconsideration if you meet with him.  I know he wants to go pro se.
20  He made that crystal clear, both in his written pleadings and
21  otherwise.
22             There are two other big issues you have to chew through.
23  The first is -- I don't know how else to say it, and there are other
24  people in the room -- he said some very upsetting things to the
25  psychiatrist at Fort Devens.  I don't know, was this made available

```
 1   to Mr. Watkins?
 2            THE CLERK:  Yes.  I submitted to him a copy of the report.
 3            THE COURT:  All right.  I think he may have seen it because
 4   he was prior counsel.  I've been a judge 20 years, and there isn't
 5   much that surprises me, but -- he may say he didn't say it, but some
 6   upsetting things.  And I want you to read that before you go down
 7   there because he doesn't want you, not personally, but he doesn't
 8   want an attorney.
 9            MR. SCHNEIDER:  Right.  He said that on the transcript.
10            THE COURT:  He's very angry.  He showed his anger in the
11   last proceeding, and the things that he said potentially were very
12   violent.
13            So the issue is, you may need to hire your own
14   psychiatrist, which I will of course provide funding for.  I want to
15   make sure you get enough protection when you go there to talk to
16   him.  Someone is here from the Marshals Service?  What's your name
17   for the record?
18            THE MARSHAL:  Kate Wilson.
19            THE CLERK:  From the Marshals Service.
20            THE COURT:  You may want to talk.  And the last but not
21   least is, if we have another hearing in the near future and he's not
22   been medicated or in some ways in a different frame of mind, we may
23   have to take certain security precautions in the courtroom.  We
24   could have him -- you're just going to have to give me guidance on
25   that.
```

E X C E R P T

```
 1              And so I treat this as an initial status.  I have appointed
 2   you for all purposes.  Originally Mr. Watkins had asked for both a
 3   competency hearing and a dangerousness hearing, and I authorized a
 4   psychiatrist to look at competency as well as dangerousness.  I
 5   don't even think it got close to that because it -- I don't think
 6   anyone has looked at -- I think the other doctor, he spurned her as
 7   well.  Dr. Julia Reid was the other person.  She didn't even go in
 8   and meet with him, right?
 9              MR. CALLAHAN:  According to both his prior counsel, there
10   was some very brief introductory, maybe some forms or an
11   introduction, but no evaluation according to them.
12              THE COURT:  He said there was someone he wanted, I think.
13   He wants to hire somebody, right?
14              MR. CALLAHAN:  I think, because you asked him, you know,
15   "You can pick your own," and he said, "Well, I haven't really
16   thought about that, but I'll pick my own.  I haven't thought about
17   it at this point."
18              THE COURT:  So of course I'll authorize payment, assuming
19   the person is qualified and not too expensive and that sort of
20   thing; but I mostly think that it's important for me -- I've done
21   enough research to believe that at least based on what I've
22   personally seen and the prior court rulings and the recent report,
23   that I think it's important to appoint you for all purposes.  And
24   you may do your own research.  You're certainly real smart.  You've
25   represented people with mental health issues before, right?
```

1         MR. SCHNEIDER:  When I was a public defender in the state
2    courts, I've done a bit of that.
3         THE COURT:  So maybe you can come up with some other
4    grounds.  I just, as a practical matter, given how angry he was, I
5    don't know how, unless he's -- I don't know whether he's basically
6    calmed down or whatever -- I don't even know how he would represent
7    himself.
8         MR. SCHNEIDER:  The only thing I would want to say, and it
9    may be helpful for me to put this on the record, I mean, I am very
10   aware that under the due process clause, he may have kind of a real
11   autonomy right in actually representing himself, if he's
12   sufficiently competent to make a knowing, intelligent, and voluntary
13   waiver of his statutory right to counsel because he doesn't have
14   a --
15        THE COURT:  He may.  That's right, it's civil and it's not
16   criminal.  We've looked at some of the due process things.  He
17   certainly has a due process right to be here at a hearing.  He's
18   objecting to my even appointing you.  I don't know if you've had a
19   chance to read.  He sends me a lot.
20        MR. SCHNEIDER:  Oh, I didn't read that, but I've read the
21   transcripts.
22        THE COURT:  Yes, so I think the next hearing needs to have
23   him here, I think.  I have to have a hearing.  I can't in absentia
24   do anything.  I just needed to make sure you were willing to take it
25   before I underwent the rest of it.  And I'm at this point, without

1  prejudice, overruling his objection to having counsel appointed.  If
2  you look at the law and you think I'm wrong, let me know, and we'll
3  write on it.
4           MR. SCHNEIDER:  Oh, I think I need to speak with him first
5  to figure out what --
6           THE COURT:  Yes.  He may feel very comfortable with you.
7           MR. SCHNEIDER:  Yes.  We'll find out.
8           THE COURT:  He's at Devens, isn't he?
9           MR. CALLAHAN:  Yes, your Honor.
10          THE MARSHAL:  Yes, your Honor.
11          THE COURT:  Let me ask you this:  Is anyone aware, has he
12 been starting to take his medications?  Does anyone know?
13          MR. CALLAHAN:  Your Honor, I have some insight into that.
14 He is taking some medications.  I know Mr. Watkins had talked about
15 he needs to be on lithium.  He thought that was, you know, something
16 that was going to benefit him.  He has refused to take lithium.  I
17 don't know for how long, but since before Mr. Watkins was on the
18 case, he was refusing to take lithium, still is.  He's taking some
19 other medications.  I don't know the full extent of those, but it's
20 not lithium.
21          THE COURT:  All right, so as counsel for all purposes, you
22 should read the report.  Okay, all right.  Should I set a hearing
23 now?  I'm afraid to lose the -- he does have a due process right.
24 This has taken forever for obvious reasons.  We've had trouble
25 finding counsel and --

```
 1              MR. SCHNEIDER:  Could I suggest that maybe we set a status
 2    date as the next event?
 3              THE COURT:  With or without him?
 4              MR. SCHNEIDER:  With him.
 5              THE COURT:  With him, fine.
 6              MR. SCHNEIDER:  A status with him.
 7              THE CLERK:  Just tell me how far, a month?
 8              THE COURT:  Tell me.
 9              MR. SCHNEIDER:  A month would be great.
10              THE COURT:  Fine.
11              THE CLERK:  I can do it the last week in February.  I don't
12    think it's school vacation.  The 25th is a Tuesday or the 24th in
13    the morning?
14              MR. SCHNEIDER:  Those are both fine.
15              MR. CALLAHAN:  Both of those work fine.
16              THE CLERK:  Okay, so is Monday morning okay?
17              (Discussion between the Court and Clerk.)
18              THE COURT:  Tuesday, just in case the jury trial goes.
19              THE CLERK:  Tuesday the 25th at 9:00 o'clock?
20              MR. SCHNEIDER:  Sure.
21              THE CLERK:  Okay.
22              THE COURT:  And can I see you both at sidebar just for one
23    second.
24              ████████████████████████████
25                        ████████████████████████████████████████████████
```

E X C E R P T





17   THE CLERK: Okay, so I scheduled a status conference. It's
18   Tuesday, the 25th, at 10:00 o'clock.
19         (Adjourned, 9:33 a.m.)

E X C E R P T

1     <u>C E R T I F I C A T E</u>

2

3

4     UNITED STATES DISTRICT COURT )
      DISTRICT OF MASSACHUSETTS    ) ss.
      CITY OF BOSTON               )

5

6

7           I, Lee A. Marzilli, Official Federal Court Reporter, do

8     hereby certify that the foregoing transcript, Pages 1 through 11

9     inclusive, was recorded by me stenographically at the time and place

10    aforesaid in Civil Action No. 13-11530-PBS, United States v. Brian

11    Mahoney, and thereafter by me reduced to typewriting and is a true

12    and accurate record of the proceedings.

13          Dated this 28th day of May, 2014.

14

15

16

17

18                  /s/ Lee A. Marzilli
                    _____
19                  LEE A. MARZILLI, CRR
                    OFFICIAL COURT REPORTER
20

21

22

23

24

25

E X C E R P T