UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                 )
UNITED STATES OF AMERICA,        )
                                 )
              Petitioner,        )
                                 )
        v.                       )        CIVIL NO. 13-11530-PBS
                                 )
BRIAN MAHONEY,                   )
                                 )
              Respondent.        )
                                 )
_____ )
```

**MEMORANDUM AND ORDER**

May 21, 2015

SARIS, Chief Judge.

## I. INTRODUCTION

The *pro se* Respondent, Brian Mahoney, was civilly committed on October 14, 2014, pursuant to 18 U.S.C. § 4246, after the Court concluded by clear and convincing evidence that Mahoney was "presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to the property of another." United States v. Mahoney, 2014 WL 5302956, *15 (D. Mass. 2014). The Court assumes familiarity with its Memorandum and Order of commitment in this case, which outlines Mr. Mahoney's prior offenses, personal and treatment history, and conduct while incarcerated.

On November 25, 2014, Mr. Mahoney filed an appeal *in forma pauperis* and moved for the appointment of appellate counsel. On

1

January 22, 2015, Mr. Mahoney again sought the appointment of counsel, and on March 3, 2015, he moved to vacate the Court's order of commitment and requested a new evidentiary hearing. The government did not oppose any of these motions. For the following reasons, we recommend that the First Circuit allow the motion to appoint appellate counsel (Docket No. 136). The motion to appoint district court counsel (Docket No. 148) and the motion to vacate the order of commitment and schedule a hearing (Docket No. 150) are **DENIED**.

## II. DISCUSSION

*A.  Motion to Vacate Commitment Order*

Mr. Mahoney has moved to vacate the Court's order allowing the government's motion for civil commitment and seeks a new evidentiary hearing as to his dangerousness. If the Court treats this as a motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e), it is untimely; such motions must be filed no more than twenty-eight days after entry of the challenged judgment, and Mr. Mahoney waited several months before challenging the Court's order of commitment. The Court therefore construes this filing as a motion for relief from a final order pursuant to Fed. R. Civ. P. 60(b).

District courts have jurisdiction to entertain Rule 60(b) motions directly even where an appeal from the challenged judgment is pending. Puerto Rico v. Colocotroni, 601 F.2d 39, 42

(1st Cir. 1979). Relief from a final judgment is "extraordinary in nature," and requires "a movant [to] demonstrate that (1) the motion is timely, (2) exceptional circumstances justify granting extraordinary relief, and (3) vacating the judgment will not cause unfair prejudice to the opposing party." <u>Gonzalez Rucci v. I.N.S.</u>, 405 F.3d 45, 48 (1st Cir. 2005).

Mr. Mahoney contends that his attorney did not provide him with effective assistance of counsel at the dangerousness hearing because his attorney (1) failed to subpoena a witness who had written a letter to the Court two months prior and (2) neglected to inform the Court of Mr. Mahoney's desire to testify at the commitment hearing. The Court has found no caselaw supporting a claim of ineffective assistance of counsel with respect to an attorney appointed with a civil commitment proceeding. <u>See</u> <u>INS v. Lopez-Mendoza</u>, 468 U.S. 1032, 1038 (1984) ("various protections that apply in the context of a criminal trial do not apply" in a "purely civil action" such as deportation). However, as with immigration proceedings, the defendant may have a due process claim under the Fifth Amendment if counsel was so ineffective that the proceeding was fundamentally unfair. <u>See, e.g.</u>, <u>Betouche v. Ashcroft</u>, 357 F.3d 147, 149 (1st Cir. 2004) ("Deportable aliens possess a Fifth Amendment due process right to be free from incompetent legal representation which renders their deportation proceedings 'fundamentally unfair.'").

First, counsel's decision not to subpoena Mr. Mahoney's ex-girlfriend, Karen DiPinto, did not create a "reasonable probability of prejudice." <u>Zeru v. Gonzales</u>, 503 F.3d 59, 72 (1st Cir. 2007) (outlining ineffective assistance standard under due process clause in deportation proceeding). Mr. Mahoney argues that counsel should have subpoenaed Ms. DiPinto on the basis of a letter she submitted to the Court two months prior to the evidentiary hearing, which suggested that Mr. Mahoney could stay with Ms. DiPinto if released into the community. Docket No. 80. In the context of ineffective assistance of counsel, "[t]he decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony." <u>Hensley v. Roden</u>, 755 F.3d 724, 737 (1st Cir. 2014). Ms. Dipinto had previously filed a restraining order against Mr. Mahoney. <u>See</u> Docket No. 120, Hrg. Tr. Day 3, at 111-12. Moreover, Ms. Dipinto's willingness to take Mr. Mahoney into her home was unclear and suspect. In fact, it appeared that she didn't want him there. <u>See</u> Docket No. 98, Hrg. Tr. Day 1, at 81, 84. But even had Ms. Dipinto been eager for Mr. Mahoney to stay with her, it would not have changed my opinion.

Nor does the record reveal that counsel failed to inform the Court of Mr. Mahoney's supposed desire to testify. Indeed, during a status conference prior to the dangerousness hearing, Mr. Mahoney stated, "I won't be testifying in this case." Docket No.

86, Hrg. Tr., at 15. Other than bare assertion, Mr. Mahoney, who is quite vocal, has not shown that counsel in any way impeded his right to speak on his own behalf. In short, Mr. Mahoney's counsel was not ineffective, and these claims certainly do not constitute the exceptional circumstances necessary to justify Rule 60(b) relief.

Mr. Mahoney also requests a second dangerousness hearing, apparently on the basis of certain evidentiary issues. At the hearing on June 3, 2014, defense counsel objected to the admission of a recording and transcript of a phone call made from the FMC Devens facility on May 28, 2014. Counsel stipulated to the authenticity of the recording, but questioned whether Mr. Mahoney could be identified as the speaker, and further objected that he had not received a transcript of the phone call until 5:40 p.m. the evening prior to the hearing. Acknowledging the difficulty of receiving evidence shortly before a court appearance, the Court permitted defense counsel to submit a supplemental response addressing any possible prejudice.

Mr. Mahoney now argues, based upon these events, that the government violated a Court discovery order and withheld exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963). "Brady does not apply in civil cases except in rare situations, such as when a person's liberty is at stake." Brodie v. Dep't of Health and Human Servs., 951 F. Supp. 2d 108, 118 (D.D.C. 2013);

see also Demjanjuk v. Petrovsky, 10 F.3d 338, 354 (6th Cir. 1993) (applying Brady in civil proceeding since "[t]he consequences of denaturalization and extradition equal or exceed those of most criminal convictions"). One court has concluded, as a matter of first impression, that Brady governs civil commitments of sex offenders under 28 U.S.C. § 4248 because that provision threatens individuals with "immediate deprivation of liberty interests they are currently enjoying." United States v. Edwards, 777 F. Supp. 2d 985, 996 (E.D.N.C. 2011); see also United States v. Ebel, 856 F. Supp. 2d 764, 766 (E.D.N.C. 2012) (adopting Edwards analysis of Brady).

Mr. Mahoney has not shown that the phone transcript was either exculpatory or "material to either guilt or punishment." U.S. v. DeCologero, 530 F.3d 36, 64 (1st Cir. 2008) (quoting Brady, 373 U.S. at 87). Nor has Mr. Mahoney demonstrated any bad faith or deliberate withholding conduct on the part of the government. As represented in open court, the government did not discover the phone call until after close of business on June 2; the prosecutor sent defense counsel an audio recording the following morning and a transcript, upon its completion, in the evening. While it is true that the Court had ordered discovery to conclude on May 15, 2014, the challenged phone call did not occur until May 28 and went undiscovered until June 2. Thereafter, the government promptly processed and disclosed the audio file and

transcript to defense counsel, who was afforded sufficient opportunity to make up for the quick turnaround. There was no Brady violation.

To the extent Mr. Mahoney attempts to raise other arguments in his Rule 60(b) motion, they are perfunctory and unsupported. The motion to vacate the sentence and schedule a new evidentiary hearing is, for all the foregoing reasons, denied.

B.    *Motions to Appoint Counsel*

Mr. Mahoney has also filed two motions for the appointment of counsel. The first, filed contemporaneously with Mr. Mahoney's notice of appeal, specifically seeks the appointment of appellate counsel. The second motion does not mention appellate counsel. Instead, Mr. Mahoney appears to be asking for counsel to litigate his motion to vacate the Court's commitment order and represent him at a new evidentiary hearing. He first represents that he has been unable to access the law library while preparing his appeal due to confinement in the Solitary Housing Unit (SHU) since October 28, 2014. Mr. Mahoney also argues that his most recent attorney was ineffective in failing to file a requested notice of appeal and preventing Mr. Mahoney from testifying at the dangerousness hearing.

Mr. Mahoney had a statutory right to court-appointed counsel at the hearing determining his dangerousness. 18 U.S.C. § 4247(d) ("At a hearing ordered pursuant to this chapter the person whose

mental condition is the subject of the hearing shall be represented by counsel").

To the extent Mr. Mahoney seeks counsel to litigate his motion to vacate the commitment order or to appear on his behalf at a new evidentiary hearing, his motion is denied. As discussed above, Mr. Mahoney's Rule 60(b) motion is meritless and the extraordinary remedy of relief from a final order unwarranted. Mr. Mahoney must raise any remaining concerns before the First Circuit on direct appeal; he is entitled to no further relief from this Court. Moreover, Mr. Mahoney has been unable to work successfully with either appointed or privately hired counsel. He has terminated three attorneys since the Court first provided him with representation on June 28, 2013, all the while strenuously seeking leave to conduct his defense *pro se*.

However, I have grave concerns about Mr. Mahoney's ability to proceed without representation on appeal. The District of New Hampshire determined, and the First Circuit affirmed, that Mr. Mahoney was incompetent to stand trial in February 2013, United States v. Mahoney, 717 F.3d 257, 266 (1st Cir. 2013); no court has since made a contrary finding. The First Circuit has yet to consider whether an incompetent defendant may proceed *pro se* during a dangerousness hearing pursuant to 18 U.S.C. § 4246. However, other circuit courts have suggested that an incompetent defendant cannot knowingly and intelligently waive his right to

counsel during a civil commitment proceeding. See, e.g., United States v. Ruston, 565 F.3d 892, 903-04 (5th Cir. 2009) (even competent respondent may be incompetent to conduct civil trial proceedings *pro se*); United States v. Klat, 180 F.3d 264, *4-*5 (5th Cir. 1999) (no error in magistrate's refusal to dismiss appointed counsel in commitment hearing where defendant's competency was uncertain). Contrast Cookish v. Cunningham, 787 F.2d 1, 4 (1st Cir. 1986) (*per curiam*) (denying motion for new attorney where "nothing about the appellant himself militated in favor of appointing counsel").

My firsthand observations of Mr. Mahoney have persuaded me that he cannot intelligently consider whether to proceed without counsel or capably prepare his own defense. In light of my serious reservations about Mr. Mahoney's ability to represent himself, therefore, I recommend that the First Circuit appoint appellate counsel.

## III. ORDER

For the foregoing reasons, I recommend that the First Circuit appoint appellate counsel in light of Mr. Mahoney's motion for same (Docket No. 136). The motion to appoint counsel (Docket No. 148) and the motion to vacate the commitment order and schedule an evidentiary hearing (Docket No. 150) are **DENIED**.

 /s/ PATTI B. SARIS
PATTI B. SARIS
United States District Judge

9