UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Petitioner,<br><br>v.<br><br>BRIAN MAHONEY,<br><br>        Respondent. | Civil Action<br>No. 13-11530-PBS |

**MEMORANDUM AND ORDER**

April 5, 2017

SARIS, C.J.

**INTRODUCTION**

Brian Mahoney was civilly committed on October 14, 2014, pursuant to 18 U.S.C. § 4246, after the Court concluded by clear and convincing evidence that Mahoney was "presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to the property of another." United States v. Mahoney, 53 F. Supp. 3d 401, 402 (D. Mass. 2014), aff'd, 661 F. App'x 1 (1st Cir. 2016). This Court found that Mahoney suffers from Bipolar Disorder and Antisocial Personality Disorder. Id. at 415. Mahoney has an extensive criminal history, with thirty-four adult criminal convictions including convictions for violent offenses. Id. at 403.

1

Mahoney moved for a hearing pursuant to 18 U.S.C. § 4247(h) to determine whether he still meets the criteria for commitment under 18 U.S.C. § 4246 (Docket No. 185). A hearing was held on January 26, 2017 and continued on January 27 and 30. Forensic psychologist Dr. Shawn Channell of Federal Medical Center in Fort Devens MA (FMC Devens) testified on behalf of the government. Mahoney subpoenaed Dr. David Hoffman, a board-certified psychiatrist and current medical director for the Metro Boston area of the Massachusetts Department of Mental Health (DMH), who determined at the state level that Mahoney did not have a qualifying mental illness. Mahoney was represented by court-appointed counsel. He did not present his own expert testimony.

After a review of the record and evidentiary hearing, the Court **DENIES** Mahoney's motion for discharge.

## FACTUAL FINDINGS

The Court bases these findings on the testimony and exhibits submitted at the evidentiary hearing.

### I. Incident Reports

As of the end of August 2016, Mahoney had gone about ten months without a disciplinary incident. However, on November 21, 2016, two incident reports were filed against Mahoney. First, an incident report was filed against Mahoney for threatening another with bodily harm. Gov't ex. 124. Dr. Gorham stated that

2

during a meeting, "MAHONEY got up from where he was sitting, walked across the room to stand close to this writer, and, in a loud, pressured voice, stated, 'You know what, [used my first name in spite of being directed not to previously], I'm from right here in Boston, and I'm getting out! REMEMBER THAT! I'm from right here in Boston and I'm going to be out there soon! Remember that!' In context, it was clear that the inmate was expressing a veiled threat but he did not make a more explicit threatening statement." Gov't ex. 124, BOP_Mahoney 01913. Mahoney responded: "I am not guilty. Boston MA is not a threat. I only got the shot because I did not apologize in the meeting. I did not threaten to bodily harm him. I just did not apologize to him." Gov't ex. 124, BOP_Mahoney 01911.

As a result of his behavior in front of Dr. Gorham, Mahoney was transferred to the locked mental health unit. Gov't ex. 105, BOP_Mahoney 01857. While his property was being packed for transfer, a bottle of pain reliever containing 29 pills of Seroquel 300mg was found in Mahoney's locker. At that time, Mahoney was proscribed 900mg of Seroquel a day. When asked about the pills found in the Aleve bottle, Mahoney admitted they were pills he was supposed to take as part of his daily medication. Consequently, a second incident report was filed against Mahoney for misuse of medication. Gov't ex. 105, BOP_Mahoney 01857.

## II. Application for State Benefits

In February 2016, Mahoney submitted an application to DMH for mental health services. Gov't ex. 134, tab 13, BOP_Mahoney 02215-20. Based on a review of Mahoney's written application, Dr. Hoffman found Mahoney did suffer from several disorders, including: attention deficit disorder, antisocial personality disorder, narcissistic personality disorder, and possibly Bipolar II. 1/26/2017 Hrg. Tr. 22:12-16. Dr. Hoffman did not find Mahoney suffered from Bipolar I and denied Mahoney state benefits on March 25, 2016. Gov't ex. 134, tab 9, BOP_Mahoney 02197-99. In this denial letter, Dr. Hoffman wrote: "There is no definitive documentation [in your initial application] of the presence of psychotic symptoms consistent with a diagnosis of Bipolar I Disorder, and thus opinions that your presentation is more consistent with a Bipolar II Disorder with episodic hypomania seem more accurate." Gov't ex. 134, tab 9, BOP_Mahoney 02198. Mahoney appealed this decision. Gov't ex. 134, tab 7, BOP_Mahoney 02174-75. A state hearing was held on September 28, 2016. Gov't ex. 135, BOP_Mahoney 02433-02532. Before the hearing, Dr. Hoffman met with Mahoney in person for one hour on June 23, 2016.

At the state hearing on September 28, 2016, Dr. Hoffman testified that Mahoney did not meet the criteria to receive DMH benefits because he did not have a "qualifying" diagnosis. Gov't

ex. 135, BOP_Mahoney 02489. Mahoney was present. It was at this hearing that Mahoney first heard Dr. Hoffman testify that he believed Mahoney did not suffer from Bipolar Disorder. Specifically, Dr. Hoffman testified: "I would give him antisocial personality disorder, narcissistic personality disorder, attention deficit hyperactivity disorder, rule out traumatic brain injury, rule out Bipolar II." Gov't ex. 135, BOP_Mahoney 02489.

### III.  FMC Devens Risk Assessment

On October 28, 2016, Dr. Channell and Mahoney's risk assessment team recommended Mahoney for conditional release. This decision was based on their review of Mahoney's behavior from the time he was originally committed in 2014. Mahoney also participated in an interview with the risk assessment panel on August 30, 2016. The panel found that although Mahoney continued to meet the diagnostic criteria for Bipolar Disorder, "his mood and behavior have generally been stable since his last Risk Assessment Panel report. As a result, it is the opinion of the undersigned that Mr. Mahoney's release under a prescribed regimen of treatment and supervision would no longer create a substantial risk of bodily injury to another person or serious damage to the property of another." Gov't ex. 104, 13.

However, after the state hearing on September 28, 2016, Mahoney's behavior shifted because he no longer believed he

suffered from Bipolar Disorder. Mahoney stopped taking his medication and instead began "cheeking" his pills, as evidenced by the incident report for misuse of medication that was filed against Mahoney on November 21, 2016. Mahoney told Dr. Channell that because of Dr. Hoffman's conclusion that he did not have Bipolar, he would cheek about one or two pills a day.

As a result of this behavior and the incident report filed against Mahoney for threatening another with bodily injury, Mahoney's risk assessment panel prepared an addendum to its October 28, 2016 report. In this addendum dated November 23, 2016, the panel found "Mr. Mahoney's functioning has significantly deteriorated since his review in August 2016; he is not medication compliant, and he is housed on a locked mental health unit pending two incident reports. His behavior and statements indicate he does not intend to abide by the conditions of release if placed on conditional release. As a result, it is the opinion of the undersigned that Mr. Mahoney's release to the community would create a substantial risk of bodily injury to another person or serious damage to the property of another as a result of mental illness. He remains appropriate for commitment pursuant to Title 18, United States Code, Section 4246." Gov't ex. 105, BOP_Mahoney 01854.

After FMC Devens found out that Mahoney was cheeking his medication on November 21, 2016, FMC Devens started crushing his

6

pills to ensure Mahoney was complying with the recommended dosage. Dr. Channell believes Mahoney is currently in compliance with his medication plan. As a result, Dr. Channell has noticed that Mahoney's mood has improved and he has moved back into an open unit.

However, Mahoney still exhibits difficulty cooperating with his treatment team and contends he will not abide with any conditions of release. For example, on December 15, 2016 Mahoney filed the following request to Dr. Gorham, his treating psychologist: "On the advise [sic] of my attorney there will be no more further contact with you or Dr. Channell. My most recent reevaluation done by Dr. Hoffman clearly ruled out Bipolar I disorder and Bipolar II disorder as well as schizophrenia and acute manic [sic]. . . . Dr. Hoffman a psychiatric and medical doctor for the Mass. (DMH) completely ruled these disorders out." Def. ex. 1. Mahoney has also stated that he will refuse to comply with any conditions of release. Gov't ex. 131. Specifically, as recently as January 12, 2017, Mahoney stated, "I will never take any conditional release, group home or halfway house. I will only take an unconditional release . . . ." Gov't ex. 131.

**DISCUSSION**

**I.   Legal Standard**

Under 18 U.S.C. § 4247, a civilly committed person is entitled to move for discharge every 180 days following a court's determination that the person should be committed. 18 U.S.C. § 4247(h). In a discharge hearing, the government no longer bears the burden of proving dangerousness. Rather, the committed person must present a preponderance of evidence proving his release no longer creates a substantial risk of bodily injury. United States v. Wetmore, 812 F.3d 245, 247-48 (1st Cir. 2016) (involving a civil commitment for sexual dangerousness); United States v. Anderson, 151 F.3d 1030, at *2 (4th Cir. June 8, 1998) (unpublished table decision) (per curiam) (holding that the committed person must present a preponderance of evidence proving that his release would "no longer create a substantial risk of bodily injury" under 18 U.S.C. § 4246(e)).

Courts consider a wide range of factors to assess whether a civilly committed person poses a "substantial risk" of dangerousness, among them his history of significant violent behavior, past compliance with medication protocols, drug or alcohol abuse, whether he has named any targets of violent behavior, and his previous use of weapons. See, e.g., United States v. Sahhar, 917 F.2d 1197, 1208 (9th Cir. 1990) (where the

individual "verbally and physically threatened staff members and other inmates, had to be physically restrained on at least one occasion, damaged at least three cells in which he was housed and physically assaulted a psychiatrist by approaching her from behind and squeezing her neck"); United States v. Ecker, 30 F.3d 966, 970-71 (8th Cir. 1997) (where the individual had a "history of dangerousness, a history of drug or alcohol use, identified potential targets, previous use of weapons, any recent incidents manifesting dangerousness, and a history of problems taking prescribed medicines").

## II. Mental Disease or Defect

Mahoney challenges the Court's previous ruling that he suffers from Bipolar I disorder. This challenge is based primarily on Dr. Hoffman's assessment. At the hearing before the Court, Dr. Hoffman testified that Mahoney does not meet the diagnostic criteria for Bipolar I since there was no evidence of a manic episode as "required for the diagnosis of bipolar I disorder." Diagnostic and Statistical Manual of Mental Disorders 124 (5th ed. 2013) [hereinafter DSM-V]. Dr. Hoffman reached this conclusion because he did not find "the discrete episodes of elevated mood, grandiosity, more goal-directed behavior" or a "decreased need for sleep," occurring over a week or two week period -- behavior typical of a manic or hypomanic episode -- in Mahoney's record. 1/26/2017 Hrg. Tr. 32:7-11. Dr. Hoffman

9

testified that because he did not find these criteria in the record, he concluded Mahoney's behavior was more likely attributable to "ADHD and his complex personality style" than Bipolar Disorder. 1/26/2017 Hrg. Tr. 31:1-4; see also 1/26/2017 Hrg. Tr. 32:7-16 (describing Mahoney's behavior not as manic but as "reactive behavior" in someone who has a "very sensitive trigger" and "tends to react in anger").

In order for an individual to be diagnosed with Bipolar I disorder "at least one lifetime manic episode is required." DSM-V at 124. A manic episode is defined as a period of mood disturbance "lasting at least 1 week and present most of the day, nearly every day (or any duration if hospitalization is necessary)." DSM-V at 124. During the period of mood disturbance three of the following criteria must be met in order for an individual to meet the Bipolar I diagnostic criteria of a manic episode:

1. Inflated self-esteem or grandiosity.
2. Decreased need for sleep (e.g., feels rested after only 3 hours of sleep).
3. More talkative than usual or pressure to keep talking.
4. Flight of ideas or subjective experience that thoughts are racing.
5. Distractibility (i.e., attention too easily drawn to unimportant or irrelevant external stimuli), as reported or observed.
6. Increase in goal-directed activity (either socially, at work or school, or sexually) or psychomotor agitation (i.e., purposelessness non-goal-directed activity).
7. Excessive involvement in activities that have a high potential for painful consequences (e.g. engaging in

>> unrestrained buying sprees, sexual indiscretions, or foolish business investments).

DSM-V at 124. Additionally, the mood disturbance must be "sufficiently severe to cause marked impairment," or "necessitate hospitalization," or there must be psychotic features. DSM-V at 124. Finally, in order for the mood disturbance to qualify as a manic episode, it cannot be "attributable to the physiological effects of a substance" or to "another medical condition." DSM-V at 124.

Dr. Channell described Bipolar Not Otherwise Specified, or Bipolar NOS, as another form of Bipolar I that is still considered a severe mental disorder. However, an individual suffering from this disorder may not meet all of the diagnostic criteria or may have different types of symptoms from a traditional Bipolar I patient. 1/27/2017 Hrg. Tr. 2-95:14-24.[1]

Bipolar II is another mental disorder that, unlike Bipolar I or Bipolar NOS, is not considered severe. In order to be diagnosed with Bipolar II an individual can never have a manic

---

[1] During the hearing the parties used the term Bipolar Not Otherwise Specified to refer to a form of Bipolar Disorder that does not meet all of the diagnostic criteria for Bipolar I. In the DSM-V this is referred to as "Other Specified Bipolar Disorder" when the "clinician chooses to communicate the specific reason that the presentation does not meet the criteria for any specific bipolar and related disorder[,]" and Unspecified Bipolar when the clinician "chooses not to specify the reason that the criteria are not met . . . ." DSM-V at 148-49. For the purpose of this order, we use the term Bipolar Not Otherwise Specified. The use of this specific term does not affect the holding.

episode. See DSM-V at 131 ("Diagnosis of bipolar I disorder is differentiated from bipolar II disorder by determining whether there have been any past episodes of mania."); DSM-V at 132-33 (describing the diagnostic criteria for Bipolar II disorder to include a hypomanic, not a manic episode). Once an individual sustains a manic episode, he is considered to be Bipolar I. Bipolar II is characterized by hypomanic or depressive episodes. DSM-V at 132-33.

Dr. Channell testified he personally observed Mahoney during a manic episode. 1/27/2017 Hrg. Tr. 2-117:10-14. At least two of these manic episodes lasted at least one week. 1/26/2017 Hrg. Tr. 128:4-9. During these manic episodes, Dr. Channell described that Mahoney "experienced rapid speech, inflated self-esteem, grandiosity, violent behavior [and] difficulty sleeping." 1/26/2017 Hrg. Tr. 128:4-9. Dr. Channell also noted that "[t]here have been multiple notations over the years of periods of time where [Mahoney has] only needed three or four hours of sleep at night . . . which is classic bipolar disorder." 1/27/2017 Hrg. Tr. 2-41:11-21. Based on Dr. Channell's review of Mahoney's case file and conversations with Mahoney's treatment providers, Dr. Channell testified that at least twelve other individuals have diagnosed Mahoney with either Bipolar I or Bipolar NOS: MCI Concord in 2009; Stratford County Jail; the Massachusetts Department of Corrections; Dr.

12

Mart in 2011; Dr. Goodwin in 2012; Dr. Kambampati in 2012; Dr. Beaulieu, his treating psychologist, in 2013; Dr. Kriegman in 2014; Dr. Kissin in 2015; Dr. Tillbrook in 2015 and 2016; and his current treating psychologist, Dr. Gorham. Dr. Channell agrees with these diagnoses. At least three doctors have described Mahoney as "manic." Dr. Eric Mart, gov't ex. 107, BOP_Mahoney 00132 and gov't ex. 136, BOP_Mahoney 00136; Dr. Kambampati, gov't ex. 110; and Dr. Channell.

According to Dr. Channell, there have only been two doctors who have diagnosed Mahoney with Bipolar II -- Dr. Kissan and Dr. Kazim. 1/27/2017 Hrg. Tr. 2-26:10-15. Dr. Kissin originally diagnosed Mahoney with Bipolar II in July 2011. Gov't ex. 107, BOP_Mahoney 00128. In 2015, Dr. Kissin changed her diagnosis to Bipolar I in concurring with the risk panel assessment diagnosis. Gov't ex. 103. Between these two time periods Dr. Kissin reviewed more of Mahoney's records and also participated in the risk panel interviews with Mahoney. Dr. Kazim diagnosed Mahoney with Bipolar II in 2015. On November 4, 2015, the "Behavioral Health Treatment Plan Worksheet" from FMC Devens categorized Mahoney's "working diagnosis" as Bipolar II Disorder. Def. ex. 3. Dr. Channell's understanding of this worksheet is that it represented Dr. Kazim's own diagnosis, not the treatment team's diagnosis, which was Bipolar NOS. 1/27/2017 Hrg. Tr. 2-96:16-2-97:4.

Dr. Hoffman's testimony is not credible because he based his testimony on the review of a small subset of Mahoney's files in this case. He reviewed only 50 of the 3000 pages related to Mahoney's case[2] and only met with Mahoney once for an hour. Based on this limited record review, he disagreed with (or was unaware of) the diagnosis of other psychologists and psychiatrists who had treated Mahoney in the past eight years. He also did not know about the manic episodes or the sleep disturbance. Based on Dr. Channell's testimony and the evidence in the record, the Court continues to find that Mahoney suffers from a form of Bipolar Disorder, either Bipolar I or Bipolar NOS.

### III. Substantial Risk of Danger

The Court has serious concerns about Mahoney's ability to function safely in society upon release. A recent incident report indicates that he continues to threaten staff members at FMC Devens and is unable to control his temper, most notably when he is not compliant with his medication. Mahoney's unwillingness to comply with his current treatment and his repeated statements that he will not comply with conditions of release support the government's contention that he cannot be released safely. Before Dr. Hoffman's diagnosis, when Mahoney was participating in treatment and taking his prescribed 900mg

---

[2] Dr. Hoffman requested records from Mahoney's FMC Devens social worker but he only received a limited number of files.

14

of Seroquel, he appeared to be improving. There were no incident reports filed against Mahoney for ten months, resulting in the risk assessment panel's initial recommendation that Mahoney should be conditionally released. However, since that assessment, Mahoney went through a period of non-compliance with his medication, he refused treatment, an incident report for threatening another with bodily harm was filed against him, and he stated vehemently that he was unwilling to follow any conditions of release.[3] Unfortunately, his uncle can only house him for one month. I find Mahoney has not met his burden to show that if released, he will no longer pose a substantial risk of bodily injury to others in the community.

## ORDER

The Court **DENIES** Mahoney's motion for discharge under 18 U.S.C. § 4247 (Docket No. 185).

                                                     /s/ PATTI B. SARIS_____
                                                     PATTI B. SARIS
                                                     Chief United States District Judge

---

[3]     Defense counsel argues the Court cannot compel Mahoney to comply with his medication. Docket No. 218. Since the Court finds Mahoney is currently compliant with his medication at this time, it need not address this issue.